THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ALAN R. ELLIOTT, Defendant-Appellant.

Fourth District   No. 13296

Opinion filed March 31, 1977.

Richard J. Wilson and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Paul C. Komada, State's Attorney, of Charleston (G. Michael Prall and Jeffrey B. Levens, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE REARDON delivered the opinion of the court:

This is an appeal by the defendant from an adverse finding in a post-conviction proceeding in Coles County, Illinois. In the preceding criminal case, offenses occurring in both Coles and Union County were consolidated and defendant pleaded guilty to (a) rape, a violation of section 11-1(a) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 11—1(a)); (b) aggravated assault, a violation of section 12—2(a)(1) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 12—2(a)(1)); (c) unlawful use of firearms, a violation of section 24—1(a)(10) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 24—1(a)(10)); (d) kidnaping, a violation of section 10—1(a)(2) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 10—1(a)(2)); (e) aggravated kidnaping, a violation of section 10—2(a)(3) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 10—2(a)(3)); and (f) attempt murder, a violation of section 8—4(a) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 8—4(a)). Defendant initially entered a negotiated plea of guilty to all the offenses wherein it was agreed that a 4- to 12-year sentence would be imposed. This was refused by the court. Upon renegotiation, defendant's guilty pleas were accepted and he was sentenced to an indeterminate imprisonment term with a minimum set at 5 years and a maximum set at 15 years. Defendant thereupon sought relief pursuant to the Post-Conviction Relief Act (Ill. Rev. Stat. 1973, ch. 38, par. 112—1 *et seq.*) which was denied by the trial court. The defendant appeals from the trial court's judgment denying his contentions that his counsel's failure to fully investigate the charges and to pursue a possible intoxication defense constituted ineffective assistance of counsel and that he was improperly found guilty of aggravated assault, kidnaping and aggravated kidnaping on the ground that they arose out of the rape offense conduct.

A review of the evidence indicates that on the evening of February 13, 1973, the defendant went to a party where he drank wine and consumed an unknown quantity of unknown drugs which may have been hallucinogenic. Armed with a handgun, he left the party and drove to a laundromat in Coles County where he abducted a woman at gunpoint. He drove her to a rural area and raped her. The defendant then drove his victim to Union County where he forced her to spend the night with him in a motel. The next day defendant released her. That same day, defendant, seeking a place to hide, entered the basement of the home of Darwin Medlin. Mr. Medlin discovered the defendant and swung at him with a coal shovel. The defendant then fled and, in the process, fired three shots, one of which struck and injured Mr. Medlin. The defendant was arrested shortly thereafter and held in the Union County jail. He was transferred to Coles County on May 19, 1973, and on May 21, 1973, Stephen Davis was appointed as defendant's counsel.

At the post-conviction hearing, Davis testified that at their first meeting defendant admitted committing the offenses as charged, that he desired to plead guilty to all the offenses in return for a 4- to 12-year sentence, and that, accordingly, he did not wish to pursue a possible intoxication defense. Davis also described his conversations with the rape victim's husband and Medlin. Davis related that both substantiated the defendant's story to the extent of their knowledge and that the rape victim and Medlin were willing to testify against the defendant. According to Davis, he did not pursue any further discovery or identification procedures because he did not wish to jeopardize any plea negotiations. Davis stated that he did not pursue the intoxication defense for the same reason and also because he believed that there was no proof to support it other than defendant's testimony. After the first negotiation was rejected by the trial court, Davis further related that he and defendant did discuss the possibility of going to trial but that this line of discussion was ended when a sentence of 5 to 15 years became a possibility. Davis testified that during the entire course of his representation he had upheld his client's rights and had acted in accord with his client's expressed desire for a negotiated plea agreement.

The defendant's testimony basically substantiated Davis' testimony. He did state, however, that Davis never told him what to do and that Davis never informed him of the Medlin conversation.

■■ The defendant contends that the failure of Davis to further investigate the charges constituted ineffective assistance of counsel because he did not know the evidence against him and consequently could not give a knowing consent to the plea negotiation. In Illinois, incompetency of counsel is to be found when representation is so poor as to amount to no representation at all or to reduce the proceeding to a

farce or mockery. (*People v. Torres* (1973), 54 Ill. 2d 384, 297 N.E.2d 142; *People v. Brown* (1975), 30 Ill. App. 3d 149, 333 N.E.2d 45.) This court, in *People v. Martin* (1976), 38 Ill. App. 3d 209, 213-214, 347 N.E.2d 200, 204, determined that in order to find incompetency of counsel for failing to discover evidence, the defendant must show actual incompetence in the failure to investigate coupled with substantial prejudice resulting therefrom, such that the cumulative effect could well have produced a different result. (*People v. Witherspoon* (1973), 55 Ill. 2d 18, 21, 302 N.E.2d 3, 4-5; *People v. Stepheny* (1970), 46 Ill. 2d 153, 158, 263 N.E.2d 83, 86.) Mere conjecture that a more thorough investigation might have produced evidence favorable to defendant does not support a claim of prejudice. (*People v. Lewis* (1975), 60 Ill. 2d 152, 158, 330 N.E.2d 857, 860.) Here the defendant does not contend that the outcome of his case would probably have been different if his counsel had been more diligent in his investigation. Defendant merely conjectures that the outcome may have been different. This speculation is not sufficient to warrant reversal.

■■ Davis' failure to pursue a possible intoxication defense is also not reversible error. There is no ineffective assistance of counsel or a denial of justice where both defendant and his attorney are aware of a possible defense, where both considered such a defense, and where it was concluded that while such a defense may have been available, it could not have been successfully used and that the plea was in defendant's best interests. (*People v. John* (1975), 31 Ill. App. 3d 749, 333 N.E.2d 629.) In this case, there is no error because defendant and his counsel, with knowledge of the possible defense of intoxication, accepted the negotiated plea as being in defendant's best interests.

■■ During the course of his representation, Davis attempted to counsel defendant in religious matters. Defendant's suggestion that this interfered with Davis' representation is without merit. The record discloses that Davis, while admittedly attempting to spiritually instruct and help defendant, did not allow his religious beliefs to interfere with his representation of defendant.

■■ The defendant suggests that this court abandon the farce and mockery standard for measuring effectiveness of counsel. Although some other State and Federal jurisdictions have adopted a more strict standard, the standard set by our supreme court is controlling and we elect to follow it. See *People v. Pangburn* (1976), 41 Ill. App. 3d 781, 354 N.E.2d 152; *People v. Schott* (1976), 39 Ill. App. 3d 266, 350 N.E.2d 49; *Brown*; *People v. Ortiz* (1974), 22 Ill. App. 3d 788, 317 N.E.2d 763.

Defendant's last contention is that the trial court erred in entering judgment on the offenses of aggravated assault, kidnaping and

aggravated kidnaping on the ground that all arose out of the rape offense.

■■ Our supreme court, in *People v. Hood* (1974), 59 Ill. 2d 315, 319 N.E.2d 802, expressly held that where the conduct which constituted the basis for the aggravated assault charge was the same conduct which constituted the rape charge, that such conduct could not be the basis for a separate offense of aggravated assault. (*People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1.) In the instant case, defendant was impermissibly convicted of aggravated assault for conduct which also provided an element of force in the rape charge.

The aggravated kidnaping charge alleged that defendant had "knowingly and secretly confined[d] [the victim] against her will and inflict[ed] bodily harm on her." The kidnaping was framed in these words: "[the defendant] did by the use of force carry [the victim] from Charleston, Coles County, Illinois to Mattoon, Union County, Illinois, with the intent secretly to confine her against her will." The aggravated kidnaping charge refers to the defendant's activities leading up to and including the rape. The kidnaping indictment refers to defendant's taking his victim from Coles County to Union County after the rape.

In *People v. Ford* (1976), 44 Ill. App. 3d 94, 357 N.E.2d 865, this court reversed a defendant's conviction and sentence for the offense of aggravated kidnaping which preceded a rape for which the defendant was also convicted and sentenced. The test used to determine whether separate charges may be sustained is whether the offenses were clearly distinct and required separate elements of proof: the *Ford* court found compelling the fact that defendant's objective, motive and purpose remained unchanged until after the rape was completed. Accord, *People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819; *People v. Donaldson* (1976), 44 Ill. App. 3d 280, 358 N.E.2d 107; *People v. Meredith* (1976), 37 Ill. App. 3d 895, 347 N.E.2d 55.

■■ In the instant case it is clear that defendant's objective, motive and purpose in committing the aggravated kidnaping was to effect the rape. The two offenses were not distinct and separate. It is also clear that the defendant's spiriting his victim to another part of the State was a change in purpose and conduct aimed at avoiding capture. This conduct established that his objective, motive and purpose had changed from his earlier behavior culminating in the rape. (See *Williams; People v. Whittington* (1970), 46 Ill. 2d 405, 265 N.E.2d 679.) Because the penalty for rape is more severe than that of aggravated kidnaping (*Ford*), the conviction for the lesser degree offense of aggravated kidnaping cannot stand. *People v. Schlenger* (1958), 13 Ill. 2d 63, 147 N.E.2d 316.

Accordingly, defendant's convictions and sentences for the offenses of

aggravated assault and aggravated kidnaping are reversed. The convictions for attempt murder, rape, unlawful use of firearms, and kidnaping are affirmed. The cause is remanded to the circuit court with directions to issue an amended mittimus.

Affirmed in part, reversed in part and remanded with directions.

CRAVEN, P. J., and TRAPP, J., concur.